IN THE UNITED STATES DISTRICT COURT
Southern District of Indiana
Indianapolis Division

CHANDLER TWO HUNTER BEACH, )
)
Plaintiff, )
) Case No. 1:19-CV-04607-RLY-TAB
v. )
)
)
CITY OF CARMEL POLICE )
DEPARTMENT, CITY OF CARMEL, a )
Municipality, and ADAM THEIS, an )
Individual; )
Defendants. )

## DEFENDANT, CITY OF CARMEL'S, MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

Plaintiff, Chandler Two Hunter Beach, alleges he was unlawfully arrested and detained as a result of Defendant, Carmel Police Detective, Adam Theis's, investigation into an armed robbery that occurred on July 28, 2018 at a Speedway gas station in Carmel, IN. As a result of Theis's investigation, Plaintiff was identified as one of the suspects and was arrested on November 20, 2018.

Plaintiff's Amended Complaint states two causes of action against the City of Carmel:

Count I-Malicious Prosecution under 42 U.S.C. Section 1983

Count II-False Imprisonment

1

## II.    STATEMENT OF UNDISPUTED FACTS

1.  Defendant Adam Theis, a detective with the Carmel Police Department, was involved in the investigation of an armed robbery that occurred on July 25, 2018 at approximately 4:41 a.m. at a Speedway gas station. (Ex. A, Affidavit of Adam Theis, ¶¶3-4).

2.  Theis was contacted shortly after the armed robbery occurred and reported to the scene approximately 30 minutes after the robbery. (Ex. A, Affidavit of Adam Theis, ¶4).

3.  The gas station Cashier, Jerry Poe, reported that two black males entered the store, one armed with a handgun demanding money. (Ex. A, Affidavit of Adam Theis, ¶¶5-6).

4.  Poe described the two suspects as a black male in their late teens, each approximately six feet tall, and approximately 150 pounds. (Ex. A, Affidavit of Adam Theis, ¶9).

5.  Theis reviewed the gas station's security video of the robbery which confirmed the events as describe by Jerry Poe, except the suspects appeared to be shorter than estimated by Poe, and between 5'6" and 5'9". (Ex. A, Affidavit of Adam Theis, ¶¶10-11).

6.  Suspect 1 was wearing a red hooded sweatshirt with a "D" and "Dhoshea" written across the front and left a bag of Cheetos on the counter during the robbery. (Ex. A, Affidavit of Adam Theis, ¶¶ 12-13).

7.  Four fingerprints were located on the bag of Cheetos. (Ex. A, Affidavit of Adam Theis, ¶13).  An analysis from the Indiana State Police identified two

of the fingerprints belonged to Tyric Hollins who, later upon questioning, admitted to being one of the individuals that robbed the Speedway gas station. (Ex. A, Affidavit of Adam Theis, ¶¶13, 15-17).

8. Hollins identified the other individual as "Moni", but he did not give any additional information about "Moni." (Ex. A, Affidavit of Adam Theis, ¶18).

9. After Hollins was arrested, a search warrant for his phone was approved by Magistrate Judge Darren Murphy on September 11, 2018. (Ex. A, Affidavit of Adam Theis, ¶20).

10. Pursuant to the warrant, a forensic examination of his phone was performed on September 12, 2018 by Carmel Police Detective, William Haymaker who has specialized knowledge and skill in this type of forensic analysis. (Ex. A, Affidavit of Adam Theis, ¶20, Ex. B, Affidavit of Haymaker, ¶3,6).

11. Although Detective Haymaker is a detective for the Carmel Police Department, he is stationed at Fishers Police Department because he is part of joint task force between the Fishers Police Department and the Carmel Police Department. (Ex. B, Affidavit Haymaker ¶ 3-4).

12. As part of his duties with the task force, he performs forensic examinations of cellphones like the one he performed on Hollins's phone. (Ex. B, Affidavit Haymaker ¶ 5).

13. The same day Detective Haymaker performed the forensic examination of Hollins's phone, he downloaded the data from Hollins's phone to a server at the Fishers Police Department where it was stored instead of being

placed on the hard drive and into evidence because of its large size and because the data contained photos and videos of a female who appeared to be a juvenile having sex. (Ex. B, Affidavit Haymaker ¶7).

14.   It is common practice for large amounts of data and electronic evidence from cell phones to be stored on a server at the Fishers Police Department. (Ex. B, Affidavit Haymaker ¶8).

15.   The examination of Hollins's phone revealed three videos taken on the same morning as the robbery. (Ex. A, Affidavit of Adam Theis, ¶21).

16.   One video was taken 39 minutes after the robbery and portrayed Hollins showing off a handgun which Theis identified as the handgun used in the robbery. (Ex. A, Affidavit of Adam Theis, ¶22).

17.   The second video contained a video taken 56 minutes following the robbery at what appeared to be a Shell Gas Station. (Ex. A, Affidavit of Adam Theis, ¶23).

18.   In that video, Hollins is wearing a black visor hat and is displaying the same handgun which was used in the commission of the robbery and fanning out money. (Ex. A, Affidavit of Adam Theis, ¶23).

19.   A third video was taken at 5:41am (1 hour following robbery) showing a black male (not Hollins) wearing the red "Doshea" sweatshirt with the hood up displaying a different handgun and also showing money. (Ex. A, Affidavit of Adam Theis, ¶24).

20.   Hollins's phone also contained a group text thread in which a participant with the phone number (317) 517-9051 sent two photographs of himself;

one with a handgun sitting in his lap and a closeup of the individual's face. (Ex. A, Affidavit of Adam Theis, ¶¶ 25-26).

21. The person in those photographs appeared to Theis to be the same person in the store security video and the third video taken after the robbery. (Ex. A, Affidavit of Adam Theis, ¶27).

22. After further investigation, Theis was able to determine the person in the photograph was Plaintiff, Chandler Two Hunter Beach. (Ex. A, Affidavit of Adam Theis, ¶¶29-32).

23. After learning Beach's name, Theis also checked the BMV records which listed Beach as 5'8" weighing 155 pounds, fitting the general description of the second suspect. (Ex. A, Affidavit of Adam Theis, ¶33).

24. Based on his investigation, Theis believed that Beach was the second suspect in the robbery. (Ex. A, Affidavit of Adam Theis, ¶34).

25. On November 14, 2018, Theis submitted a probable cause statement to the Hamilton County Prosecutor and an arrest warrant was issued for the arrest of Plaintiff. (Ex. A, Affidavit of Adam Theis, ¶35, ex. 1; Ex. D, Order finding Probable Cause and Issuance of Warrant, Hamilton County Cause Number 29D03-1811-F3-007944[1]).

26. Plaintiff was arrested on November 20, 2018, pursuant to the judicially approved arrest warrant. (Ex. A, Affidavit of Adam Theis, ¶37).

27. Theis then submitted a probable cause affidavit for a search warrant of Beach's iPhone for any evidence on the phone which was approved by

---

[1] Defendant asks the Court to take judicial notice of the State Court record pursuant Fed. R. of Evidence 201.

Magistrate Judge Murphy on November 21, 2018. (Ex. A, Affidavit of Adam Theis, ¶50).

28.   Theis then provided Beach's phone to Detective Haymaker for a forensic analysis. (Ex. A, Affidavit of Adam Theis, ¶51).

29.   Detective Haymaker discovered that videos and photographs on Beach's iPhone may have depicted minor females in sexual acts, and as a result, could be considered child pornography. (Ex. A, Affidavit of Adam Theis, ¶52).

30.   Theis received the results of Detective Haymaker's forensic examination of Beach's iPhone on November 27, 2018 and concluded his investigation at that time. (Ex. A, Affidavit of Adam Theis, ¶¶53-54).

31.   Theis's case report was uploaded to a software system called "Aegis/New World". (Ex. A, Affidavit of Adam Theis, ¶47).

32.   On any given case, the deputy prosecutor assigned to the case will have access the "Aegis/New World" system and can review case reports and scanned documentation as well as being able to see if evidence is available at either the Carmel Police Department or the Fishers Police Department. (Ex. A, Affidavit of Adam Theis, ¶47).

33.   As was the situation here, downloads of electronic evidence, such as forensic data from cell phones, is available through the Fishers Police Department and the Deputy Prosecutor could have come to review it at any time.  (Ex. A, Affidavit of Adam Theis, ¶47, Ex. B, Affidavit Haymaker ¶10).

34. At all relevant times after November 27, 2018, all information related to the investigation of Plaintiff's suspected involvement in the gas station robbery, including the evidence and information (specifically messages, videos, and photographs) obtained from Hollins's iPhone and Beach's iPhone ) were available to the State of Indiana through its local county prosecutor upon request through normal discovery channels about which the prosecutor's office should be well versed. (Ex. A, Affidavit of Adam Theis, ¶55).

35. The first time Brian Johnson, the Deputy Prosecutor assigned to Beach's criminal case, asked Theis for the analysis of the downloads of Hollins's and Plaintiff's phones was in a January 22, 2019 email to Theis. (Ex. A, Affidavit of Adam Theis, ¶58, ex. 3).

36. Theis also forwarded Johnson's request by email to Detective Haymaker on January 30, 2020. (Ex. A, Affidavit of Adam Theis, ¶59 ex. 4).

37. On February 4, 2019, Theis responded that both Hollins's and Beach's phone contained child pornography and, therefore, if Beach's attorney wanted to see them, he would have to come to the police department. (Ex. A, Affidavit of Adam Theis, ¶60, ex. 5).

38. Theis and Johnson also spoke on the phone during which Theis informed Johnson of the proper procedures to make arrangements to view the evidence with potential child pornography at the police department. (Ex. A, Affidavit of Adam Theis, ¶¶60-61).

39.   On February 7, 2019, Deputy Prosecutor Johnson contacted Detective Haymaker asking if he could send an analysis of the phone without the photos of the juvenile female. (Ex. B, Affidavit Haymaker ¶11).

40.   On February 11, 2019, Detective Haymaker responded to Johnson, providing a link to the analysis of Beach's phone. (Ex. B, Affidavit Haymaker ¶ 12).

41.   Johnson responded that he received the analysis of Beach's phone but also needed the analysis of Hollins's phone. (Ex. B, Affidavit Haymaker ¶13).

42.   Detective Haymaker provided Johnson the analysis of Hollins's phone on February 19, 2020 without the potential pornography. (Ex. B, Affidavit Haymaker ¶14).

43.   The City served interrogatories to Plaintiff that asked Plaintiff to state each and every way Plaintiff contends the Defendant, City of Carmel, is liable to Plaintiff and as to each contention, state the facts which form the basis of that contention. Plaintiff responded:

> ANSWER: Plaintiff objects to this interrogatory as premature since discovery has just commenced. Plaintiff cannot answer with specificity as to the City's liability as well as causation of Plaintiffs alleged damages. Plaintiff will supplement this answer as discovery continues. Plaintiff further objects to this interrogatory to the extent that it asks conclusions regarding liability and causation. Without waiving any objections, Plaintiff refers Defendant to his Amended Complaint.

(Ex. C, Plaintiff's Response to City's Interrogatory #6).

44.   When asked whether Plaintiff was asserting any claim(s) of a violation of Plaintiff's federal constitutional rights against the City and/or if he was claiming that any express policy, widespread practice, or person with decision making authority caused the deprivation Plaintiff responded:

> ANSWER: Plaintiff objects to this interrogatory to the extent that is premature since discovery has just commenced. Without waiving any objections, Plaintiff will supplement this answer as discovery continues.

(Ex. C, Plaintiff's Response to City's Interrogatories #18-20).

45.   When asked to identify and describe with specificity each and every basis for the allegation in his Amended Complaint that the City of Carmel, through its Police Department, has a widespread practice of systematic discrimination of black men as shown through its violations of the 4th Amendment, that is so well settled and permanent as to constitute a custom or usage with the force of law, Plaintiff responded:

> ANSWER: Plaintiff objects to this interrogatory to the extent that is premature since discovery has just commenced. Without waiving any objections, Plaintiff believes that the City of Carmel, through its police department, has a widespread practice of targeting black men and wrongly accusing them of crimes that they did not commit. Plaintiff will supplemental this answer as discovery continues.

(Ex. C, Plaintiff's Response to City's Interrogatory #21).

### III.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmoving party must marshal

and present the Court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. [A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

## IV.   ARGUMENT

### A.  Plaintiff's Federal claims against the City of Carmel fail as a matter of law because there is no evidence that any policy, custom, or policymaker action caused any constitutional deprivations

Strict constraints limit municipal liability under 42 U.S.C. §1983. *Palmquist v. Selvik*, 111 F.3d 1332, 1343 (7th Cir.1997), reh'g and suggestion for reh'g *en*

*banc* denied. "[M]unicipal governments cannot be held liable for damages under 42 U.S.C. § 1983 on a theory of *respondeat superior* for constitutional violations committed by their employees." *Simpson v. Brown County*, 860 F.3d 1001, 1005-6 (7th Cir. 2017) citing *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 690-91 (1978). A governmental entity may be liable under Section 1983 only if the entity caused the constitutional deprivation through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the entity's officers. *Monell,*, 436 U.S. at 690.  Thus, whatever the nature of Plaintiff's theories of constitutional deprivations, Plaintiff must show that an official policy or custom not only caused the constitutional violation but was "the moving force" behind it. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Plaintiff cannot do so in this case.

The courts have established three general ways to demonstrate governmental liability under Section 1983. To show governmental liability, the plaintiff must prove (1) the alleged deprivations were conducted pursuant to an express policy, statement, ordinance, or regulation that, when enforced, caused the constitutional deprivation; (2) the conduct was one of a series of incidents amounting to an unconstitutional practice so permanent, well settled, and known to the policymaker as to constitute a "custom or usage" with the force of law; or (3) the conduct was caused by a decision of the final policymaker. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).  In order to prove his claim of "widespread practice," Plaintiff must prove "a pattern of events . . . indicative of an unconstitutional custom or practice." *Palmer v. Marion County*, 327 F.3d

588 (7th Cir. 2003). A single occurrence is insufficient evidence of a widespread practice. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

Plaintiff's Amended Complaint contains a boilerplate allegation that "the City of Carmel, through its Police Department, has a widespread practice of systematic discrimination of black men as shown through its violations of the 4th Amendment, that is so well settled and permanent as to constitute a custom or usage with the force of law". (Plaintiff's Amended Complaint, ECF 13¶ 31). However, Plaintiff has provided no facts to support this allegation. Rather, despite specific interrogatories asking Plaintiff to provide the facts and evidence to support his claims, he offers nothing more than a repetition of his bald, self-serving assertions and merely asserts "Plaintiff believes that the City of Carmel, through its police department, has a widespread practice of targeting black men and wrongly accusing them of crimes that they did not commit." (Ex. C, Plaintiff's Response to City's Interrogatory #21). However, to avoid summary judgment, plaintiff may not merely rest on the allegations of his complaint but must come forth with some fact or facts to suggest that a claimed policy or custom exists, and that the alleged deprivation resulted from enforcement or pursuit of that policy, i.e., that the deprivation was not an "isolated" incident. *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985). The Seventh Circuit has repeatedly held that self-serving assertions and bare allegations not supported by specific facts do not give rise to a genuine issue of fact and are not sufficient in opposing a motion for summary judgment. *Conley v. Village of Bedford Park*, 215 F.3d 703, 712 (7th Cir. 2000.) *McDonnell v. Cournia*, 990 F.2d

963, 969 (7th Cir. 1993) (self-serving assertions without more will not defeat a motion for summary judgment).  *See Jones v. Merchants Nat'l Bank & Trust Co.,* 42 F.3d 1054, 1057 (7th Cir. 1994) (self-serving assertions without factual support in the record will not defeat a motion for summary judgment.).  As the Seventh Circuit has repeatedly held:

> We often call summary judgment, the "put up or shut up" moment in litigation, *see, e.g., Everroad v. Scott Truck Sys., Inc.,* 604 F.3d 471, 476 (7th Cir. 2010); *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009), by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case. And by evidence, we mean evidence on which a reasonable jury could rely.

*Goodman*, 621 F.3d at 654.

Here, Plaintiff offers no specific facts, witnesses, or evidence to support his assertions, and his bald, self-serving assertions alone are insufficient to raise a question of material fact sufficient to survive summary judgment.  Therefore, the City of Carmel is entitled to summary judgment on Plaintiff's Federal law claims. B.    *Plaintiff's Claim for Malicious Prosecution fails as a matter of law.*

Count I of Plaintiff's amended Complaint is entitled "Malicious prosecution under 1983". (ECF 13, p. 6). However, is unclear whether Plaintiff is attempting to bring this claim pursuant to 42 U.S.C. §1983, to bring it pursuant to state law, or both because Count I contains an allegation that states "In violation of his due process rights under the 4th Amendment and Indiana law, Defendants subjected Plaintiff to illegal charges, arrest, seizure, and prosecution resulting in reputational, emotional and financial harm to the Plaintiff. (ECF 13, ¶13).

1. <u>The City of Carmel is Immune from any state law malicious prosecution claim</u>

To the extent Plaintiff is claiming a state-law malicious-prosecution claim, the City of Carmel is immune from such a claim. Indiana law recognizes the tort of malicious prosecution. *See, e.g., City of New Haven v. Reichhart*, 748 N.E.2d 374, 378–79 (Ind.2001). The Indiana Tort Claims Act, however, shields government employees and entities such as the City from these claims. *See* IND. CODE § 34–13–3–3(6); *Howlett v. Hack*, 794 F.3d 721, 727 (7th Cir. 2015). As a result, the City is immune from any state-law malicious-prosecution claim Plaintiff may be bringing and, therefore, it necessarily fails as a matter of law.

2. <u>There is no evidence to support a federal law malicious prosecution claim</u>

To the extent Plaintiff's claim is brought pursuant to federal law, as previously argued, Plaintiff's federal claim fails because has there is no evidence any that a policy, custom, or policymaker action caused any constitutional deprivations. Furthermore, Plaintiff has no evidence to support a claim of any specific constitutional violation resulting from the alleged malicious prosecution against him.

Federal courts are rarely the appropriate forum for a claim of malicious prosecution. *Welton v. Anderson*, 770 F.3d 670, 673 (7th Cir. 2014); *Serino v. Hensley*, 735 F.3d 588, 592 (7th Cir. 2013). This is primarily because "individuals do not have a federal right not to be summoned into court and prosecuted without probable cause." *Welton,* 770 F.3d at 673 (internal quotation omitted). Malicious prosecution is not by itself an infringement on the right to

due process under the Fourteenth Amendment. *Id.*, 770 F.3d at 674. Therefore, Plaintiff must show a predicate constitutional violation beyond just prosecution without probable cause. *See Welton*, 770 F.3d at 673; *Serino*, 735 F.3d at 592. The predicate constitutional deprivation must occur post arraignment and must deprive the plaintiff of liberty or property without due process of law.

      a.  <u>Plaintiff's claim for malicious prosecution under Section 1983 fails because he cannot satisfy the elements of a state law cause of action</u>

In order to sustain a claim for malicious prosecution under Section 1983, a plaintiff must demonstrate (1) he has satisfied the elements a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty. *Welton*, 770 F.3d at 674.

The elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor. *City of New Haven*, 748 N.E.2d at 378. "Malice may be shown by evidence of personal animosity or inferred from a complete lack of probable cause or a failure to conduct an adequate investigation under the circumstances." *Welton*, 770 F.3d at 674 (internal quotation marks omitted) (quoting *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 462 (7th Cir. 2009)).

In this case, not only was there probable cause to arrest and prosecute Plaintiff, there is no evidence that would suggest Defendants acted with malice. Plaintiff claims that Defendants "knowingly submitted false statements in order

to obtain probable cause to arrest Plaintiff"[2].   (ECF, 13 ¶ 36).  However, there is

no evidence to support such a claim. Plaintiff does not dispute that the forensic

examination of Hollins's phone contained videos that Detective Theis believed

showed Hollins and the other suspect of the Speedway armed robbery on July

25, 2018, shortly after the robbery. (ECF, 13 ¶ 16). Plaintiff also does not dispute

that from the forensic examination of Hollins's phone Detective Theis located a

chat thread which included photographs of Plaintiff. (ECF, 13 ¶ 16). However,

Plaintiff contends, without any factual support, that Detective Theis's Probable

Cause Affidavit for Plaintiff's arrest was false—in that Theis claims that he

identified the photographs as the same subject in the video following the robbery.

(ECF, 13 ¶ 18-19).

A law enforcement officer has probable cause when "the facts and

circumstances within [his] knowledge and of which [he] has reasonably

trustworthy information [are] sufficient to warrant a prudent [person] in believing

that the [suspect] had committed or was committing an offense." *Sheik-Abdi v.*

*McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994). "It requires more than bare

---

[2] In the "Factual Allegations" section of Plaintiff's Amended Complaint, Plaintiff also alleges that Detective Theis "made false statements in his Affidavit for Probable Cause, on or about November 21, 2018, requesting a search warrant of Beach's Apple iPhone". (ECF 13 ¶¶ 27-28). These allegations are not specifically referenced in any of the Counts of Plaintiff's amended Complaint. However, it does not appear that Plaintiff is claiming these allegations relate to Plaintiff's Malicious Prosecution claim because Plaintiff alleges he was arrested on November 20, 2018. (ECF, 13 ¶ 20) and Count I of Plaintiff's Amended Complaint for Malicious alleges Defendants "knowingly submitted false statements in order to obtain probable cause to arrest Plaintiff". (ECF, 13 ¶ 36). Since Plaintiff had already been arrested at the time Detective Theis submitted his Search Warrant Probable Cause Affidavit, any statements made in that Affidavit would have no bearing on Plaintiff's arrest because probable cause to arrest Plaintiff had already been found. For these same reasons, the allegations related to the Search Warrant Probable Cause affidavit could not be the basis for Count II of Plaintiff's Amended Complaint for False imprisonment. Should Plaintiff be making such a claim, Defendant reserves the right to address it in Defendant's Reply.

16

suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Swearnigen-El v. Cook County Sheriff's Dept.*, 602 F.3d 852, 863 (7th Cir. 2010). The Seventh Circuit has noted that "it does not take much to establish probable cause." *Fox v. Hayes*, 600 F.3d 819, 833 (7th Cir. 2010). The fact that the individual is not ultimately convicted of the charges does not mean that there was no probable cause. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). The identification or testimony of a witness alone is generally sufficient to establish probable cause. *Phillips v. Allen*, 668 F.3d 912, 915 (7th Cir. 2012). *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003). Once an officer has probable cause on every element of a crime, he need not continue to investigate to test the suspect's claim of innocence. *Beauchamp*, 320 F.3d at 745-46.

It is not disputed that Plaintiff was arrested pursuant to a facially valid warrant. (ECF 13, par. 20). When an arrest is judicially authorized, as it was in this case, "we presume the validity of [the] warrant and the information offered to support it." *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010). But "the presumption may give way on a showing that the officer who sought the warrant knowingly or intentionally or with a reckless disregard for the truth[ ] made false statements to the judicial officer and that the false statements were necessary to the judicial officer's determination." *Id.* (quotation marks and alterations omitted). A "'reckless disregard for the truth' can be shown by demonstrating that the officer 'entertained serious doubts as to the truth' of the statements, had 'obvious reasons to doubt their accuracy,' or failed to disclose facts that he

or she 'knew would negate probable cause.'" *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir.2012), quoting *Beauchamp*, 320 F.3d at 743

In this case, whether Theis incorrectly identified Plaintiff as the person in the video does not invalidate the warrant and thereby negate probable cause. Rather, the pertinent inquiry is whether Detective Theis made the statements in his Probable Cause Affidavit *knowing that they were false or with a reckless disregard for the truth*. There is simply no evidence to support such a claim. There is no dispute the photographs in the group text were photographs of Plaintiff. Plaintiff even alleges the same in his Amended Complaint. (ECF 13 ¶ 17). There is also no dispute that the photos of Plaintiff appeared to Theis to be the same person in the store security video and the video taken after the robbery. (Ex. A, Affidavit of Theis, ¶27). Once Theis determined that the person in the photos was Plaintiff, Theis also checked the BMV records which listed Beach as 5'8" weighing 155 pounds, fitting the general description of the second suspect in video.(Ex. A, Affidavit of Theis, ¶33).

In order to sustain a claim for malicious prosecution under Section 1983, a plaintiff must demonstrate he has satisfied the elements a state law cause of action for malicious prosecution. *Welton*, 770 F.3d at 674. Plaintiff cannot satisfy at least two of those elements: that Defendant acted maliciously or that the defendant had no probable cause to institute the action. Plaintiff was arrested pursuant to a valid warrant and there is no evidence that Detective Theis knowingly made any false statements in obtaining the arrest warrant. Therefore, there was probable cause to arrest Plaintiff. Furthermore, there is absolutely no

evidence Defendants acted with malice in causing an action to be initiated against Plaintiff. Therefore, Plaintiff has not established the state law elements of malicious prosecution and his claim fails.

### b. Defendants did not withhold any evidence

Plaintiff also contends that Detective Theis deliberately withheld the videos found on Hollins's phone from both the prosecutor and Chandler Beach's defense attorneys. Again, there is no evidence to support such a claim. (ECF 13, ¶¶ 16, 21, 40).

In *Brady v. Maryland* , the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). To prevail on a civil *Brady*-based due process claim against a police officer, a plaintiff must demonstrate that the evidence in question was favorable to him, the police "suppressed" the favorable evidence, and prejudice ensued because the suppressed evidence was material. *See Carvajal* v. Dominguez, 542 F.3d at 566–67; *see also Cairel v. Alderden*, 821 F.3d 823, 832 & n.2 (7th Cir. 2016). Evidence is suppressed for *Brady* purposes if the "prosecution failed to disclose evidence that it or law enforcement was aware of before it was too late for the defendant to make use of the evidence" and "the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *Anderson v. City of Rockford*, 932 F.3d 494, 504–05 (7th Cir. 2019) citing *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001).

19

Assuming for the sake of argument that the videos from Hollins's phone were not favorable to Plaintiff, they were not "suppressed". The undisputed facts are:

- Detective Haymaker performed the forensic examination of Hollins's phone, he downloaded the data from Hollins's phone to a server at the Fishers Police Department where it was stored instead of being placed on the hard drive and into evidence because of its large size and because the data contained photos and videos of a female who appeared to be a juvenile having sex. (Ex. B, Affidavit Haymaker ¶7).

- It is common practice for large amounts of data and electronic evidence from cell phones to be stored on a server at the Fishers Police Department. (Ex. B, Affidavit Haymaker ¶8).

- Theis's case report was uploaded to a software system called "Aegis/New World". (Ex. A, Affidavit of Adam Theis, ¶47).

- On any given case, the deputy prosecutor assigned to the case will have access the "Aegis/New World" system and can review case reports and scanned documentation as well as is able to see if evidence is available at either the Carmel Police Department or the Fishers Police Department. (Ex. A, Affidavit of Adam Theis, ¶47).

- As was the situation here, downloads of electronic evidence, such as forensic data from cell phones, is available through the Fishers Police Department and the Deputy prosecutor could have come to review it at any time.  (Ex. A, Affidavit of Adam Theis, ¶47, Ex. B, Affidavit Haymaker ¶10).

- At all relevant times after November 27, 2018, all information related to the investigation of Plaintiff's suspected involvement in the gas station robbery, including the evidence and information (specifically messages, videos, and photographs) obtained from Hollins's iPhone and Beach's iPhone (including the information contained in Telecomm report) were available to the State of Indiana through its local county prosecutor upon request through normal discovery channels about which the prosecutor's office should be well versed. (Ex. A, Affidavit of Adam Theis, ¶55).

- The first time Brian Johnson, the Deputy Prosecutor assigned to Beach's criminal case, asked Theis for the information was when Johnson sent Theis an email on January 22, 2019. (Ex. A, Affidavit of Adam Theis, ¶58, ex. 3).

- On February 4, 2019, Theis responded that both Hollins's and Beach's phone contained child pornography and, therefore, if Beach's attorney wanted to see them, he would have to come to the police department. (Ex. A, Affidavit of Adam Theis, ¶60, ex. 5).

- Theis and Johnson also spoke on the phone during which Theis informed Johnson of the proper procedures to make arrangements to view the evidence, including the Telecomm report, at the police department. (Ex. A, Affidavit of Adam Theis, ¶61).

- On February 7, 2019 Deputy Prosecutor Johnson contacted Detective Haymaker asking if he could send an analysis of the phone

without the photos of the juvenile female. (Ex. B, Affidavit Haymaker
¶11).

- February 11, 2019, Haymaker responded to Johnson providing a
  link to the analysis of Beach's phone (Ex. B, Affidavit Haymaker ¶
  12).

- Johnson responded that he received the analysis but also needed
  the analysis of Hollins's phone. (Ex. B, Affidavit Haymaker ¶13).

- Detective Haymaker provided that analysis on February 19, 2020
  which included the videos after the robbery. (Ex. B, Affidavit
  Haymaker ¶14).

There are no facts to support any claim that Defendants deliberately withheld
evidence. Although they may have not been provided as quickly as Plaintiff would
have hoped, the videos were provided to the Deputy Prosecutor within three
weeks of being requested. (Plaintiff's Amended Complaint, ECF 13 ¶ 4, 20); (*see
Mosley v. City of Chicago*, 614 F.3d 391, 398 (7th Cir. 2010) (A fifteen-month
delay in the creation of a lineup report was not evidence that the officers were
intentionally withholding information)).

Furthermore, late disclosure does not constitute a *Brady* violation unless
the defendant is unable to make effective use of the evidence. *United States v.
Warren*, 454 F.3d 752, 760 (7th Cir. 2006); *see also, United States v. Grintjes*, 237
F.3d 876, 880 (7th Cir.2001) (*Brady* demands only that the disclosure not come
so late as to prevent the defendant from receiving a fair trial). Under these cases,
*Brady* evidence can be handed over on the eve of trial or even during trial so long

as the defendant is able to use it to his or her advantage. *Bielanski v. Cty. of Kane*, 550 F.3d 632, 645 (7th Cir. 2008). Because Plaintiff never had a trial, Defendants could not have failed to turn over evidence in time for Plaintiff to use it (for there was no opportunity for its use), nor could any failure to turn over evidence have been material (because Plaintiff was never tried, much less convicted). Therefore, any malicious prosecution based upon the withholding of evidence from the prosecutor fails because there is simply nothing to support such a claim.

Because the City of Carmel is immune from a state law malicious prosecution claim, summary judgment should be granted in favor of the City of Carmel with respect to any state law malicious prosecution claim Plaintiff may be making. Additionally, any federal law malicious prosecution claim Plaintiff may be making also fails as a matter of law because Plaintiff cannot show the City has an express policy or widespread practice or custom that caused the alleged constitutional injury or that it was caused by the person with final policymaking authority. Furthermore, Plaintiff cannot satisfy the elements of a state law malicious prosecution claim because Plaintiff was arrested pursuant to a facially valid warrant, there is no evidence Theis knowingly made false statements in his Probable Cause Affidavit to procure the warrant, and because there is no evidence to suggest Defendants acted with malice. There is also no evidence that Defendants deliberately withheld evidence.

Therefore, summary judgment should therefore be granted in favor of the City of Carmel on Plaintiff's Malicious Prosecution claim(s).

*B. Plaintiff's False Imprisonment claim fail because there was probable for Plaintiff's arrest*

Plaintiff also brings a claim entitled "False Imprisonment[3]" as Count II of his Amended Complaint. (ECF 13, p. 7). Again, it is unclear whether this claim is brought pursuant to state law claim or federal law. Regardless, since there was probable cause to arrest, whether state law or federal law, this claim fails as a matter of law. *See Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015) citing *Mustafa v. City of Chicago,* 442 F.3d 544, 547 (7th Cir.2006) ("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution."); *see also, Miller v. City of Anderson,* 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002) (Under Indiana law, "[a] defendant may be liable for false arrest when he or she arrests the plaintiff in the absence of probable cause to do so."(internal citations omitted)).

Again, to the extent this claim is brought pursuant to 42 U.S.C. § 1983, it fails because there is no evidence that the City of Carmel has an express policy or widespread practice or custom that caused the alleged constitutional injury or that it was caused by the person with final policymaking authority.

---

[3]As the Supreme Court explained in *Wallace v. Kato*, 549 U.S. 384 (2007), the torts of false imprisonment and false arrest overlap and are often treated as one tort. Both Federal and Indiana courts have used the terms "false arrest" and false imprisonment" interchangeably when a plaintiff's claim stems from detention by authorities without probable cause. *See, e.g.*, *Johnson v. Blackwell*, 885 N.E.2d 25, 30–31 (Ind.Ct.App.2008) (using the terms interchangeably when distinguishing both from malicious prosecution); *Bentz v. City of Kendallville*, 577 F.3d 776, 780, 2009 WL 2477648 (7th Cir. 2009).

Furthermore, Plaintiff cannot establish a constitutional violation because there was probable cause to arrest Plaintiff.

As previously argued, it is not disputed that Plaintiff was arrested pursuant to a facially valid warrant. Generally, plaintiff cannot successfully base a Fourth Amendment claim on an arrest made pursuant to a valid warrant and there is no evidence to support an allegation that Detective Theis made any statements in his Probable Cause Affidavit for Plaintiff's arrest knowing that they were false or with a reckless disregard for the truth. *Neiman v. Keane*, 232 F.3d 577, 579-80 (7th Cir.2000).

In his False Imprisonment Count, Plaintiff also claims that Detective Theis deliberately withheld the videos from Hollins's phone from the prosecutor and Beach's attorneys. (ECF 13,¶ 45). As previously argued, the videos were not withheld. Furthermore, this claim cannot form the basis for Plaintiff's claim of false arrest/imprisonment because typically the scope of a Fourth Amendment claim is limited up to the point of arraignment, at which point the prosecution is underway. *See Bielanski*, 550 F.3d at 638.

To the extent Plaintiff is making any false arrest/false imprisonment state law claim, it also fails as a matter of law because there was probable cause to arrest Plaintiff. The test "is not whether the arrest was constitutional or unconstitutional, or whether it was made with or without probable cause, but whether the officer believed in good faith that the arrest was made with probable cause and that such belief was reasonable." *Garrett v. City of Bloomington*, 478 N.E.2d 89, 94 (Ind. Ct. App. 1985). As explained above in connection with the

25

federal law analysis, the evidence demonstrates that Detective Theis had probable cause at the time he prepared the arrest warrant affidavit in question. Therefore, as the absence of probable cause is a necessary element for a plaintiff's false arrest/false imprisonment claims under Indiana law, to the extent Plaintiff makes a false arrest/false imprisonment state law claim, it fails as a matter of law.

Since any federal law or state law claim for false imprisonment against the City of Carmel fails as a matter of law, summary judgment should be granted in favor of the City of Carmel.

## V.    CONCLUSION

Plaintiff has brought two claims against the City of Carmel, Count I- Malicious Prosecution and Count II- False Imprisonment. Both Plaintiff's claims fail as a matter of law.

- All of Plaintiff's claims against the City of Carmel brought pursuant to 42 U.S.C. § 1983 fail as a matter of law because there is no evidence any that a policy, custom, or policymaker action caused any constitutional deprivations.

- The City of Carmel is immune to any state law claim for malicious prosecution.

- Any federal law claim for Malicious Prosecution or any claim for False Imprisonment fail as a matter of law because Plaintiff was arrested pursuant to a facially valid warrant and there is no evidence Detective Theis knowingly made false statements in his

probable cause affidavit to procure the warrant, and there is no evidence to suggest Defendants acted with malice.  There is also no evidence to support a claim that Detective Theis deliberately withheld the videos as alleged by Plaintiff.

Therefore, all Plaintiff's claims against the City of Carmel fail as a matter of law and summary judgment should be granted in favor of the City of Carmel.

Respectfully submitted,

TRAVELERS STAFF COUNSEL

By: */s/ Aimee Rivera Cole*
Aimee Rivera Cole, #24665-45

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 18th  day of November, 2020, a copy of this document was filed electronically, with a copy automatically served via the Court's CM/ECF system upon all counsel of record.

Julie A. Camden jc@camlawywers.com
David Gray
Camden & Meridew PC
10412 Allisonville Road, Suite 200
Fishers, IN  46038

Matthew L. Hinkle (mhinkle@chwlaw.com)
John V. Maurovich (jmaurovich@chwlaw.com)
Alex Emerson (aemerson@chwlaw.com)
COOTS HENKE & WHEELER
255 E. Carmel Drive
Carmel, IN 46032
(317) 844-4693


By:      */s/ Aimee Rivera Cole*
Aimee Rivera Cole, #24669-45


*TRAVELERS STAFF COUNSEL INDIANA*
280 East 96th Street, Suite 325
Indianapolis, IN  46240
DIRECT DIAL (317) 818-5123
FX (317) 818-5124
**arcole@travelers.com**