IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHANDLER TWO HUNTER BEACH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> CITY OF CARMEL POLICE ) <br> DEPARTMENT, CITY OF CARMEL, a ) <br> Municipality, and ADAM THEIS, an ) <br> Individual; ) <br> Defendants. ) | Case No. 1:19-CV-04607-RLY-TAB |

## AFFIDAVIT OF DETECTIVE ADAM THEIS

I, Adam Theis, swear and affirm under the pains and penalties of perjury as follows:

1. I am an adult resident of the State of Indiana.

2. I have personal knowledge of the facts set forth in this Affidavit.

3. I am and was at all relevant times a detective with the Carmel Police Department. In my capacity as detective, I have investigated crimes of armed robbery and theft. In the course of investigating criminal activity, I routinely gather information, evidence, and develop cases from a variety of sources including, but not limited to, from witness interviews, review of video surveillance, review of electronic media, consulting with fellow officers and detectives, and from review of documents, items, and other evidence from multiple potential sources.

4. I was involved in the investigation of an armed robbery that occurred on July 25, 2018, at approximately 4:41 a.m. at a Speedway gas station located at 10005 N. Michigan Road, Carmel, Indiana. I was contacted shortly after the armed robbery occurred and reported to the scene approximately 30 minutes after the robbery.

1

**Exhibit A - Affidavit of Detective Adam Theis**

5. In the course of the investigation, the gas station cashier, Jerry Poe, reported that a black male wearing a red hooded sweatshirt entered the gas station with his hood up. As was later confirmed by surveillance footage, Poe reported that this male subject selected a bag of Cheetos and placed the bag on the counter.

6. At that moment, a second black male wearing a dark hooded sweatshirt entered the store, brandished a gun, and demanded money from the cashier.

7. Poe ducked under the counter, ran out of the building, and called 911.

8. The suspects grabbed a cash drawer containing approximately $82.00 and fled the scene.

9. Poe described the two suspects as black males in their late teens, each weighing approximately 150 pounds and 6'0" in height.

10. The store manager allowed me to watch the security video footage from the robbery.

11. The video confirmed the events as describe by Jerry Poe, except the suspects appeared to be shorter than estimated by Poe, and between 5'6" and 5'9".

12. Suspect 1 was wearing a red hooded sweatshirt with a "D" and "Dhoshea" written across the front.

13. Suspect 1 left a bag of Cheetos on the counter during the robbery. Four fingerprints were located on the bag and submitted to the Indiana State Police for analysis.

14. As part of my investigation, I learned that the "Dhoshea" sweatshirt was made by an individual, Tonie D. Boyd, who used to live in Indianapolis, but had moved to Atlanta, Georgia. The sweatshirt was a special order and only about 50 pieces of clothing bore the "Dhoshea" design.

15. On September 4, 2018, I received a certificate of analysis from the Indiana State Police identifying two of the fingerprints as belonging to Tyric Hollins. Hollins was a student at Pike High School in Indianapolis and lived at 4902 Oakbrook Drive.

16. On September 5, 2018, I executed and submitted two probable cause affidavits. The first sought a search warrant for Hollins's DNA, and the second sought a search warrant for his residence. A Hamilton County Magistrate Judge approved the search warrants on the same day.

17. On September 6, 2018, I met with Hollins and his mother, Raven Sykes, at Pike High School. Hollins admitted to being one of the individuals that robbed the Speedway gas station.

18. Hollins identified the other individual as "Moni", but he did not give any additional information about "Moni."

19. I placed Hollins under arrest and confiscated his cellular phone—an iPhone—which was placed into evidence at the Carmel Police Department. I later submitted a probable cause affidavit for the search of Hollins's iPhone.

20. The search warrant for Hollins's iPhone was approved by Magistrate Judge Darren Murphy on September 11, 2018. A forensic examination of the iPhone was performed pursuant to the search warrant by Carmel Police Detective William Haymaker. Detective Haymaker has specialized knowledge and skill with respect to this type of forensic analysis that I do not possess.

21. The examination revealed three videos taken on the same morning as the robbery.

22. One video, taken 39 minutes after the robbery, portrayed Hollins showing off a handgun which was positively identified as the handgun used in the robbery.

23. The second video contained a video taken 56 minutes following the robbery at what appeared to be a Shell gas station. In that video, Hollins is wearing a black visor hat and is displaying the same handgun which was used in the commission of the robbery. He is also shown in the video fanning out paper currency.

24. A third video was taken at 5:41am (60 minutes following the robbery) showing an unknown black male wearing the above-described red "Doshea" sweatshirt while displaying a different handgun, but also holding and displaying paper currency.

25. In the examination of Hollins's iPhone, Detective Haymaker discovered a group text thread comprised of 31 different phone numbers. In response to a request from someone in the text group for a "selfie" to identify the members of the group text, the user of the phone bearing telephone number (317) 517-9051 sent two photographs, one of which depicted an individual sitting on a couch wearing a Burberry-style scarf around his head and a pink handgun sitting in his lap. The other photograph depicted the same individual wearing a dark shirt.

26. The above-described two photographs submitted from the telephone number (317) 517-9051 are below:



27. The individual in these photographs appeared to me to be the same person as the individual depicted in both the store security video and the third video described in Paragraph 24 above. Fellow detectives within the Carmel Police Department held the same opinion based on review of the photographs and video.

28. True and accurate still images taken from the third video on Hollins' phone are depicted below:



29. In addition, Detective Haymaker's analysis revealed that in Hollins's iPhone, there was a contact named "Moni" with the phone number (317) 793-4207. I determined this phone number was registered to Iman Daniels and her father, Damarcus Daniels.

30. On November 5, 2018, I met with Iman, her father Damarcus, and her mother Alysha. During the meeting, I showed Iman one of the photographs that had been sent from telephone number (317) 517-9051 (referenced in Paragraph 26 above) in the group text in response to the request for a "selfie", and she identified the subject as possibly being named "CJ."

31. In my investigation of the social media connections among Pike High School students, I noticed a Facebook account under the name "Cj Stacks." I recognized a photograph on Cj Stacks's account as being the same individual in the third video on Hollins's phone. In addition,

5

the two photographs that had been sent from the telephone number (317) 517-9051 (referenced in Paragraph 26 above) were displayed on the photo section of the "Cj Stacks" account.

32. On the "Cj Stacks" account, his birthday was listed as October 31, 1999. I then used Marion County records to search for individuals with that birthday. From my search in the Marion County records, I identified "Cj Stacks" as Chandler Two Hunter Beach.

33. Beach's BMV records listed Beach's height as 5'8" and weight as 155 lbs., which fit the general description of the second suspect involved in the robbery.

34. Based on my investigation, which included round table review of the case with fellow detectives in the Carmel Police Department, I believed that Beach was the second suspect in the robbery.

35. On November 14, 2018, I submitted an affidavit of probable cause to the Hamilton County Prosecutor for the purpose of obtaining an arrest warrant for the arrest of Beach. A true and accurate copy of the probable cause affidavit is attached as Exhibit 1. The prosecutor approved the probable cause affidavit and submitted it to a judicial officer, who then issued an arrest warrant.

36. On November 15, 2018, I submitted an Affidavit for Probable Cause for the search of the records of Verizon Wireless for a "Telecomm report" associated with the phone number (317) 517-9051 for the purpose of searching for evidence of the robbery. Judge Murphy issued the search warrant on November 16, 2018. True and accurate copies of the probable cause affidavit and approved warrant are attached as Exhibit 2. On November 19, 2020, the search warrant was sent to Verizon, requesting a telecommunications report from Verizon.

37. I arrested Chandler Beach on November 20, 2018, pursuant to the judicially-approved arrest warrant.

38. During the arrest, Beach was in possession of a Silver Apple iPhone that he admitted to owning.

39. I transported Beach to the Hamilton County Jail, at which point I interviewed Beach. Beach stated the he received a telephone call from Iman Daniels warning him the Carmel Police were looking for him in reference to an armed robbery, which occurred in Carmel.

40. After Beach's arrest on November 20, I received a telecommunications ("Telecomm") report from Verizon. I immediately turned over the Telecomm report to Detective Gilbert of the Carmel Police Department.

41. Other detectives and I rely on Detective Gilbert to interpret cellular data obtained from Telecomm reports and explain any pertinent data.

42. Detective Gilbert used software called "Cell Hawk" to interpret cellular data.

43. I do not use Cell Hawk or know how to interpret data from Cell Hawk.

44. After his evaluation of the data, Detective Gilbert informed advised that the Telecomm report did not conclusively prove that Beach's phone was actively used in close vicinity to the robbery location. However, it was further advised that a lack of activity on a phone is not conclusive of a given cell phone's whereabouts.

45. Based on my knowledge, experience, and training as a detective, I am aware that individuals who commit crimes often have secondary or "burner" phones, the individuals may not carry a phone on them during the commission of a crime, and/or the individuals do not carry their primary phone with them to commit crimes.

46. Also, Detective Gilbert's analysis of the Telecomm data revealed that there is limited useful information about phone usage start and stop times from which one could reliably conclude a given phone location. For example, the Telecomm data shows a session start time at

00:40:41 on 7/25/18 lasting until 05:56:26, but then also informs a session start time on 7/24/18 at 18:40:41 with an end time on 7/25/18 at 00:40:41. I understand this data reveals two physically divergent locations of the phone at the same time.

47. On any given case, the deputy prosecutor assigned to the case will have access to a software system called "Aegis/New World" in which the prosecutor will be able to review case reports and scanned documentation. From the Aegis/New World system, the deputy prosecutor will be able to see if evidence is available at either the Carmel Police Department or the Fishers Police Department. As was the situation here, downloads of electronic evidence, such as forensic data from cell phones, is available through the Fishers Police Department. With respect to Beach's criminal case, my case report was uploaded to the Aegis/New World system.

48. Even though all cellular phone data, including the Telecomm report, was made available to the prosecutor's office in a timely manner, any interpretation offered to suggest that the Telecomm report conclusively establishes that Beach's iPhone was not in the vicinity of the robbery at the time it occurred is unfounded and the information would not have exonerated Beach, proved he was not at the scene of the crime, or otherwise helped Beach obtain an acquittal.

49. I was not and am not aware of any exculpatory information that would have exonerated Beach, proved he was not at the scene of the crime, or otherwise helped Beach obtain an acquittal that was not disclosed to the prosecutor's office any time after charges were filed.

50. I submitted a probable cause affidavit for a search warrant of Beach's iPhone for any evidence on the phone (rather than the cellular data which was the subject of the Telecomm report), which was approved by Judge Murphy on November 21, 2018.

51. Upon the approval of the search warrant of Beach's iPhone, I submitted the iPhone to Detective Haymaker for forensic analysis.

52. Detective Haymaker discovered that videos and photographs on Beach's iPhone may have depicted one or more minor females in sexual acts, and as a result, could be considered child pornography.

53. I received the results of Detective Haymaker's forensic examination of Beach's iPhone on November 27, 2018.

54. Upon the receipt of the results of Detective Haymaker's forensic examination of Beach's iPhone, my investigation was concluded.

55. At all relevant times after November 27, 2018, all information related to my investigation, including the evidence and information (specifically messages, videos, and photographs) obtained from Hollins's iPhone and Beach's iPhone (including the information contained in Telecomm report) were available to the State of Indiana through its local county prosecutor upon request through normal discovery channels about which the prosecutor's office should be well versed.

56. Upon information and belief and at all relevant times, the Hamilton County prosecutor's office knows that forensic evidence of the like discussed above is housed on a server at the Fishers Police Department as part of Hamilton County law enforcement jointly making use of a task force on child sex crimes and exploitation of children.

57. At no time was there any case evidence, including electronic evidence gathered from any phone seized in the criminal case investigation, that I failed or refused to disclose to the State of Indiana, who then had the responsibility to make the evidence available to criminal defense counsel as part of discovery. To be clear, at no time did I withhold or fail to make any evidence available to the Hamilton County Prosecutor.

58.     Brian Johnson, the Deputy Prosecutor assigned to Beach's criminal case, first asked me for the forensic examination of Hollin's and Beach's phones in an email on January 22, 2019. A true and accurate copy of that email is attached hereto as Exhibit 3.

59.     I forwarded the request by email to Detective Haymaker. A true and accurate copy of that email is attached as Exhibit 4.

60.     On February 4, 2019, I responded to Brian Johnson that both Hollins' and Beach's phones contained child pornography and if Beach's attorney wanted to see the phones, he would have to examine the evidence at the police department. We exchanged emails, and then he called me on the telephone. A true and accurate copy of our email exchange is attached hereto as Exhibit 5.

61.     During my February 4, 2019 telephone conversation with Prosecutor Johnson, I again informed him of the proper procedures to make arrangements to view the evidence at the police department.

Further Affiant Sayeth Not.

_____     11-17-2020
Adam Theis                                          Date