**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| CHANDLER TWO HUNTER BEACH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-CV-04607-RLY-TAB |
| | ) | |
| CITY OF CARMEL, a municipality, and | ) | |
| ADAM THEIS, an individual. | ) | |

**DEFENDANT ADAM THEIS'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Defendant Adam Theis, by counsel, pursuant to Rule 56 of the Federal Rules

of Civil Procedure, hereby submits his Brief in Support of his Motion for Summary

Judgment.

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

In the early morning hours of July 25, 2018, two young black males robbed a

Speedway gas station at gunpoint in Carmel, Indiana.  After extensively

investigating the crime, Detective Adam Theis of the Carmel Police Department

submitted a probable cause affidavit identifying one of the robbers as Chandler Two

Hunter Beach ("Beach").  A judicially ordered arrest warrant was issued, and Beach

was arrested and charged in Hamilton County with armed robbery, pointing a

firearm at another, carrying a handgun without a license, and theft.  After Beach

was in custody at the Hamilton County Jail, however, the State dismissed the

charges against Beach.

Beach claims he was falsely arrested and imprisoned, prosecuted maliciously, and subject to an unlawful and unreasonable search.  The operative pleading, Beach's Amended Complaint, includes three counts against Defendants City of Carmel (the "City") and Detective Theis: (1) malicious prosecution against the City and Detective Theis; (2) false imprisonment against the City and Detective Theis; and (3) false arrest against Detective Theis (Dkt. 13 at ¶¶ 34-49).  Beach alleges the City and Detective Theis violated his rights under the Fourth and Fourteenth Amendments and brings this action under 42 U.S.C. § 1983 and Indiana law.

Despite Beach's allegations, there was probable cause to support Beach's arrest and the search of his property.  Detective Theis's investigation into the armed robbery was careful and thorough.  After consulting with fellow detectives about the evidence, Detective Theis accurately described the evidence he relied upon in good faith when issuing his probable cause affidavits for the search and arrest warrants. The warrants were valid and approved by a judicial officer. Because probable cause existed for the arrest and pre-trial detainment of Beach, and because Detective Theis is entitled to qualified immunity, the Court should grant Detective Theis's motion for summary judgment.

## II.    STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### A.    The Robbery

On July 25, 2018, at approximately 4:41 a.m., one black male entered the Speedway Gas Station located at 10005 N. Michigan Road, Carmel, Indiana.  (Dkt. 45-1 - Affidavit of Adam Theis at ¶¶ 4-5).  The suspect brought a bag of Cheetos to

the counter.  (Dkt. 45-1 at ¶ 5).  The suspect was wearing a red hooded sweatshirt.  (Dkt. 45-1 at ¶ 5).  While the first suspect was at the counter, a second black male wearing a dark hooded sweatshirt entered the store and pointed a handgun at the clerk.  (Dkt. 45-1 at ¶ 6).  The clerk ducked, ran out of the building, and called 911.  (Dkt. 45-1 at ¶ 7).  The suspects grabbed a cash drawer containing approximately $82 and fled the scene.  (Dkt. 45-1 at ¶ 8).

Several officers of the Carmel Police Department responded to the scene.  Detective Theis was contacted shortly after the robbery and was asked to report to the scene.  (Dkt. 45-1 at ¶ 4).  The clerk described the suspects as two black males in their late teens, each weighing approximately 150 pounds and approximately 6'0" in height.  (Dkt. 45-1 at ¶ 9).  The manager of the Speedway Gas Station arrived shortly thereafter and allowed Detective Theis to watch the video surveillance.  (Dkt. 45-1 at ¶ 10).  Detective Theis confirmed the events of the robbery as described by the clerk.  (Dkt. 45-1 at ¶ 11).  Detective Theis also observed the suspects were shorter than estimated by the clerk, and the red sweatshirt worn by the first suspect had a large "D" and the word "Dhoshea" written on it.  (Dkt. 45-1 at ¶¶ 11, 12).  Fingerprints were discovered on the bag of Cheetos, and the bag was submitted to the Indiana State Police for analysis.  (Dkt. 45-1 at ¶ 13).

### B.      The Investigation

On September 4, 2018, Detective Theis received a certificate of analysis from the Indiana State Police identifying two of the fingerprints from the scene of the robbery as belonging to Tyric Hollins.  (Dkt. 45-1 at ¶ 15).  Hollins was a student at

Pike High School in Indianapolis and lived at 4902 Oakbrook Drive.  (Dkt. 45-1 at ¶ 15).  Detective Theis submitted probable cause affidavits in support of a search warrant for Hollins's DNA and his residence, which were approved by a judicial officer.  (Dkt. 45-1 at ¶ 16).

On September 6, 2018, Detective Theis met with Hollins and his mother, Raven Sykes, at Pike High School.  (Dkt. 45-1 at ¶ 17).  Hollins admitted he was one of the suspects that robbed the gas station, and he identified the other individual as "Moni."  (Dkt. 45-1 at ¶¶ 17-18).  Hollins did not give any more information about "Moni."  (Dkt. 45-1 at ¶ 18).  Detective Theis placed Hollins under arrest and confiscated his cellular phone, which was placed into evidence at the Carmel Police Department.  (Dkt. 45-1 at ¶ 19).  Detective Theis later completed a probable cause affidavit in support of search warrant for the contents of the phone, which was approved by a judicial officer.  (Dkt. 45-1 at ¶¶ 19-20).

Detective Theis requested a forensic analysis on the cellular phone from Detective Haymaker of the Carmel Police Department.  (Dkt. 45-1 at ¶ 20; Dkt. 45-7, Affidavit of William Haymaker at ¶ 6).  Detective Haymaker has specialized knowledge to perform a forensic analysis on a phone, and Detective Haymaker performed the analysis on Hollins's phone on September 12, 2018.  (Dkt. 45-1 at ¶ 20; Dkt. 45-7 at ¶¶ 5-6).  After performing the forensic analysis on Hollins's phone, Detective Haymaker downloaded the data to a server at the Fishers Police Department, rather than placed on a hard drive.  (Dkt. 45-7 at ¶ 7).  This is a

4

common practice where there are large amounts of data and electronic evidence. (Dkt. 45-7 at ¶ 8).

In the analysis of the phone, it was discovered that three videos were recorded shortly after the robbery.  (Dkt. 45-1 at ¶ 21).  The first video was recorded 39 minutes after the robbery and depicts Hollins displaying a firearm that was identified as the one used in the robbery.  (Dkt. 45-1 at ¶ 22).  The second video was recorded 56 minutes after the robbery and depicts Hollins displaying the same firearm and fanning dollar bills into his lap.  (Dkt. 45-1 at ¶ 23).  The third video was recorded 60 minutes after the robbery and depicts an unknown black male wearing the red Doshea sweatshirt (previously worn by Hollins during the robbery) with the hood up and displaying a different firearm, but also holding and displaying currency.  (Dkt. 45-1 at ¶ 24).

Detective Haymaker also discovered two photographs sent to Hollins's cell phone from the telephone number (317) 517-9051 in a group text message thread. (Dkt. 45-1 at ¶ 25).  In one of the photographs sent from the telephone number (317) 517-9051, an individual is seated on a couch wearing a Burberry-style scarf and a pink handgun is sitting in the subject's lap.  (Dkt. 45-1 at ¶¶ 25-26).  According to Detective Theis, the photographs depicted the same individual who appeared in the third video recorded on Hollins's phone after the robbery.  (Dkt. 45-1 at ¶¶ 26-28).

In addition, Detective Haymaker advised Detective Theis that in Hollins's cell phone, there was a contact named "Moni" and with the phone number of (317) 793-4207, which was registered to Iman Daniels.  (Dkt. 45-1 at ¶ 29). On November

5, 2018, Detective Theis met with Iman Daniels, her father Damarcus, and her mother Alysha. (Dkt. 45-1 at ¶ 30). Detective Theis showed Iman one of the "selfie" photographs sent from the phone number (317) 517-9051, and Iman identified the subject as "CJ." (Dkt. 45-1 at ¶¶ 26, 30).

Detective Theis searched social media connections among Pike High School students and discovered the Facebook account of an individual named "Cj Stacks" that displayed the same photographs as had been sent in the group text to Hollins's phone. (Dkt. 45-1 at ¶ 31). On his Facebook account, Cj Stacks' birthday was listed as 10/31/1999. (Dkt. 45-1 at ¶ 32). Detective Theis searched Marion County records for individuals with that birthday and identified "Cj Stacks" as Beach. (Dkt. 45-1 at ¶ 32). Beach's information on his BMV records lists Beach as 5'8" and 155 lbs., which fits the general description of the second suspect involved in the robbery. (Dkt. 45-1 at ¶ 33). Based on his investigation of the robbery, Detective Theis believed Beach was the second suspect in the robbery, a conclusion supported by other detectives in the Carmel Police Department. (Dkt. 45-1 at ¶¶ 27, 34).

## C. Detective Theis's Probable Cause Affidavit, Beach's Arrest, and the Continuing Investigation

On November 14, 2018, Detective Theis completed an Affidavit for Probable Cause in support of charges against Beach. (Dkt. 45-2, Exh. A-1 Probable Cause Affidavit in Support of Arrest Warrant for Chandler Beach). In the affidavit, Detective Theis described his investigation and the steps that led to his conclusion that Beach was the second suspect in the robbery. (Dkt. 45-2). In addition, Detective Theis submitted an Affidavit for Probable Cause in support of a search

warrant for the information regarding the telephone number (317) 517-9051 and the associated account.  (Dkt. 45-3, Exh. A-2 Probable Cause Affidavit in Support of Search Warrant for Records related to (317) 517-9051).  The search warrant was issued by Magistrate Judge Darren Murphy and sent to Verizon Wireless.  (Dkt. 45-3).

On November 15, 2018, Judge Murphy expressly found probable cause and issued a warrant for Beach's arrest on four charges arising from the robbery:  armed robbery, pointing a firearm at another, carrying a handgun without a license, and theft.  (Dkt. 45-8, Order Finding Probable Cause for Arrest of Chandler Beach; Dkt. 45-9, Warrant for the Arrest of Chandler Beach).  On November 19, 2020, Detective Theis submitted an application for a search warrant on Beach's residence, which was also approved by Judge Murphy.  (Dkt. 45-10, Warrant for the Search of Beach's Residence).

On November 20, 2020, Detective Theis and supporting officers arrested Beach at his residence.  (Dkt. 45-1 at ¶ 37).  Detective Theis confiscated a Silver Apple iPhone 6 during the search of the residence, which Beach claimed as his, and held the iPhone in evidence.  (Dkt. 45-1 at ¶ 38).  Judge Murphy later approved a search warrant for information on the phone.  (Dkt. 45-11, Search Warrant Beach iPhone).  Detective Theis interviewed Beach at the Hamilton County Jail, and he stated that Iman Daniels warned him the Carmel police were looking for him in reference to an armed robbery.  (Dkt. 45-1 at ¶ 39).

**D.     The Criminal Case, Discovery, and Communications about Evidence**

Hamilton Superior Court held its initial hearing in Beach's criminal case on November 21, 2018.  (Dkt. 45-12, Order on Initial Hearing).  The Court again found there was probable cause for Beach's arrest.  (Dkt. 45-12).  The Court appointed a public defender to represent Beach.  (Dkt. 45-12).  In the charging information, potential witnesses are listed, including Detective Theis, Detective Haymaker, and the Carmel Police Department Evidence Technician.  (Dkt. 45-13, Charging Information).  On January 2, 2019, Deputy Prosecutor Brian Johnson filed the State's Discovery Response and Notice of Compliance.  (Dkt. 45-14, State's Discovery Response).  On the State's Discovery Response and Notice of Compliance, Beach's counsel was advised that he may "examine any tangible items of evidence identified above or within the above documents by contacting the investigating law enforcement agency."  (Dkt. 45-14).  In addition, on January 2, 2019, Attorney Matthew Kestian entered his appearance on behalf of Beach.  (Dkt. 45-15, Appearance of Attorney Matthew Kestian).

On January 22, 2019, Deputy Prosecutor Johnson requested documents from Detective Theis, including "a complete copy of the phone analyses done on Hollins and Beach's phone."  (Dkt. 45-4, Exh. A-3 January 22, 2019 Email from Brian Johnson to Adam Theis).  Detective Theis forwarded the request to Detective Haymaker.  (Dkt. 45-5, Exh. A-4, January 30, 2019 Email from Adam Theis to William Haymaker).

On February 4, 2019, Detective Theis responded, informing Deputy Prosecutor Johnson that there was child pornography on both of the phones and that if the defense wanted to view the information, the defense attorney would need to come to the police station.  (Dkt. 45-6, Exh. A-5 Emails exchanged on February 4, 2019 between Brian Johnson and Adam Theis).  In addition, Detective Theis and Deputy Prosecutor Johnson spoke on the telephone, and Detective Theis again informed him of the proper procedures to make arrangements to view the evidence at the police department.  (Dkt. 45-1 at ¶ 61).  On February 7, Deputy Prosecutor Johnson contacted Detective Haymaker asking for the analysis of the phones without the photos and videos of the juvenile female, and Detective Haymaker provided that information for Beach's phone on February 11, 2019.  (Dkt. 45-7 at ¶¶ 10-11).  On February 19, 2020, Detective Haymaker provided the same analysis of Hollins's phone.  (Dkt. 45-7 at ¶ 13).

On February 19, 2019, Deputy Prosecutor Johnson moved to voluntarily dismiss the criminal charges against Beach, and the Order on the State's Motion to Dismiss was entered on February 20, 2019.  (Dkt. 45-16 Order on State's Motion to Dismiss).

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  An element is considered material if it is essential to a party's claim and may affect its ultimate result.  *Id.* at

323; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Disputes that are merely factual or colorable in nature will be deemed irrelevant and are insufficient to counter a proper motion for summary judgment. *Anderson,* 477 U.S. at 248. Unless there is sufficient evidence upon which a reasonable fact finder could rule in favor of the non-moving party, the claim is subject to a motion for summary judgment. *Id.* at 249.

The party that bears the burden of proving a particular element is responsible for doing so in response to a summary judgment motion. *Celotex,* 477 U.S. at 323.  However, once a moving party indicates there is no issue of material fact, the non-moving party must counter this assertion by going "beyond the pleadings" and setting forth specific facts and evidence which demonstrate "the existence of a genuine, material, triable issue." *Green v. White,* 17 F.3d 199, 202 (7th Cir. 1994). A non-moving party's subsequent failure or inability to prove such elements "renders all other facts immaterial" and is ultimately fatal to the claim. *Id.* (*citing Celotex,* 477 U.S. at 323).

## IV.   ARGUMENT

Beach claims his constitutional rights were violated when he was arrested and detained under the arrest warrant issued by Judge Murphy.  For Beach's claim to survive summary judgment, he must overcome a high hurdle because a person arrested pursuant to a facially-valid warrant generally cannot prevail in a Section 1983 suit for false arrest.  *Juriss v. McGowan,* 957 F.2d 345-350 (7th Cir. 1992).  This is the case even if arrest warrant is later determined to have an

inadequate factual foundation.  *Id.*  An exception to this rule is where the officer responsible for the unlawful arrest knew the arrest warrant had been issued without probable cause, such as in a situation where an officer obtained the warrant by deceiving the judicial officer.  *Id.*  The central issue in this case is whether Detective Theis presented a factually adequate arrest warrant to Judge Murphy and, if he did not, whether any evidence exists to show that Detective Theis *knew* probable cause did not exist for Beach's arrest at the time he submitted the affidavit.  *Beauchamp v. City of Noblesville,* 320 F.3d 733, 734 (7th Cir. 2003).

Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution.  *Hart v. Mannina,* 798 F.3d 578, 587 (7th Cir. 2015) (citing *Mustafa v. City of Chicago,* 442 F.3d 544, 547 (7th Cir. 2006)).  Here, probable cause existed for Beach's arrest.  Even if the Court finds probable cause did not exist, Detective Theis's actions were reasonable based on the totality of evidence gathered during his extensive investigation into the robbery, which led to the arrests of Hollins and Beach.  Even if Beach claims that Detective Theis did not perform a perfect investigation because he allegedly nabbed the wrong guy, there is no evidence that Detective Theis knew probable cause did not exist.  Lastly, Detective Theis is entitled to qualified immunity with respect to Beach's claims because his actions did not violate Beach's clearly established statutory or constitutional rights of which a

reasonable officer would have known.  *Whitlock v. Brueggemann,* 682 F.3d 567, 580 (7th Cir. 2012).

### A. Probable Cause Existed for Beach's Arrest, and as a result, Beach's claims of False Arrest, False Imprisonment, and Malicious Prosecution Fail.

When an arrest is made pursuant to a facially-valid warrant, the court will presume the validity of the warrant and the information offered to support it. *Whitlock v. Brown,* 596 F.3d 406, 410 (7th Cir. 2010).  The presumption may give way on a showing that the officer who sought the warrant knowingly or intentionally or with a reckless disregard for the truth made false statements to the judicial officer and that the false statements were necessary to the judicial officer's determination.  *Id.*

Probable cause is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed.  *Beauchamp,* 320 F.3d at 743 (citations omitted).  It existed in this case if, at the moment Detective Theis sought the warrants for Beach's arrest, the facts and circumstances within his knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that Beach had committed the crimes. *Id.*  In determining whether information submitted to a judicial officer in support of a warrant application was sufficient to establish probable cause, a court will look only

at what the officer knew at the time he sought the warrant, not at how things turned out in hindsight. *Id.*

In his Amended Complaint, Beach brings claims of malicious prosecution, false imprisonment, and false arrest.[1]  It is unclear whether the false imprisonment claim is brought pursuant to state law claim or federal law.  Regardless of whether the claim is brought under state or federal law, since there was probable cause to arrest him, this claim fails as a matter of law. *See Hart*, 798 F.3d at 587; *see also Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002) (stating that under Indiana law, "[a] defendant may be liable for false arrest when he or she arrests the plaintiff in the absence of probable cause to do so." (internal citations omitted)).

To succeed on his claims, Beach must show not only that probable cause did not exist with respect to his arrest, but also Detective Theis knew probable cause did not exist.  To address these questions, a court must look at the facts and circumstances known to Detective Theis at the time he submitted the probable cause affidavit.

Detective Theis knew the gas station had been robbed by two black males, each of whom weighed approximately 150 pounds and stood between 5'6" and 5'9" tall. (Dkt. 45-1 at ¶¶ 5-12).  Detective Theis knew the male wearing the distinctive

---

[1] As explained in *Wallace v. Kato*, 549 U.S. 384 (2007), the torts of false imprisonment and false arrest overlap and are often treated as one tort. Both federal and Indiana courts have used the terms "false arrest" and false imprisonment" interchangeably when a claim arises from detention allegedly without probable cause. *See, e.g., Johnson v. Blackwell*, 885 N.E.2d 25, 30–31 (Ind.Ct.App.2008) (using the terms interchangeably when distinguishing both from malicious prosecution).

red sweatshirt was identified by fingerprint analysis as Tyric Hollins, and that Hollins later confessed to the crime. (Dkt. 45-1 at ¶¶ 15, 17). On Hollins' phone, which had been forensically examined by Detective Haymaker, Detective Theis discovered three videos taken shortly after the robbery. (Dkt. 45-1 at ¶¶ 21-24; Dkt. 45-7 at ¶ 6). The third video, taken one hour after the robbery, displayed an unknown individual, now wearing the distinctive red sweatshirt that had been worn by Hollins during the robbery, displaying currency and a handgun. (Dkt. 45-1 at ¶ 24). The investigation did not stop there.

On Hollins's phone, Detective Haymaker also discovered two "selfie" photographs sent from the phone number (317) 517-9051 that resembled the individual in the third video. (Dkt. 45-1 at ¶ 25). A comparison of the selfie photographs and stills from the video are below:





(Dkt. 45-1 at ¶¶ 26, 28).

Detective Theis continued the investigation to determine the identity of the individual in the photographs and ultimately support the conclusion that Beach was the second suspect in the robbery.  Based on Hollins's statement that "Moni" was the other individual, Detective Theis contacted the "Moni" listed in Hollins's phone, Iman Daniels.  (Dkt. 45-1 at ¶¶ 18, 29, 30).  Daniels identified the individual in the selfie photograph as "CJ."  (Dkt. 45-1 at ¶ 30).  Detective Theis then searched social media, BMV records, and Marion County records to further investigate whether the second suspect was Beach.  (Dkt. 45-1 at ¶¶ 31-34).  Beach is further connected to the individual in the selfie photograph by the hot pink handgun visible in the photograph and the report that Beach had been previously stopped with a hot pink handgun in his possession.  (Dkt. 45-1 at ¶ 26; Dkt. 45-2 at pp. 5-6).  During the extensive investigation, Detective Theis reviewed the evidence with fellow detectives and they reasonably concluded that Beach was the second robbery suspect recorded in the third video on Hollins's phone.  (Dkt. 45-1 at ¶¶ 27, 34).

These conclusions address a central question concerning whether Detective Theis's identification of the second suspect as Beach—by comparing the photographs sent from Beach's phone to the third video—was reasonable. It was. Even though Beach contends that he is not the person in video, he admits that he is the person in the photograph that Detective Theis discovered during his investigation and used for comparison purposes. (Dkt. 13, ¶17). Moreover, probable cause requires reasonableness, not certitude. Probable cause does not require certainty, it is a fluid concept that relies on the common-sense judgment of officers based on the totality of the circumstances. *Hart,* 798 F.3d at 587. Probable cause requires more than a "bare suspicion," but less than "probability" and even less than the officer's belief is more likely true than false. *Woods v. City of Chicago,* 234 F.3d 979, 996 (7th Cir. 2000). In short, it does not take much to establish probable cause. *Fox v. Hayes,* 600 F.3d 819, 833 (7th Cir. 2010).

Probable cause can be based on a single identification from a credible eyewitness. *Hart,* 798 F.3d at 587; *see also Woods,* 234 F.3d at 996 (stating the Seventh Circuit has "consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause."); *see also Beauchamp,* 320 F.3d at 743 (stating that the complaint of a single witness generally is sufficient to establish probable cause unless the complaint would lead a reasonable officer to be suspicious). The identification of a suspect by police officers after reviewing video and photographic evidence is even stronger because the officer has the ability to examine the photograph and consider whether it—along with

16

other case evidence–allows for a probable positive identification.  Contrast this situation with an eyewitness to a crime who may be under stress and see the suspect only once, whereas Detective Theis had the time and opportunity to consult with fellow detectives to determine whether other trained professionals would positively identify the suspect.

In *U.S. v. Carpenter,* the Seventh Circuit found the fact a suspect wore distinctive clothing, including a white designer jacket and "tiger-embellished jeans", six hours after a man wearing an identical outfit robbed a bank, contributed to a finding of probable cause. 342 F.3d 812, 814-815 (7th Cir. 2003).  In addition, in *Carpenter,* the Seventh Circuit found that an individual's "propinguity to others independently suspected of criminal activity" was relevant to a probable cause determination.  *Id.* at 815.

Here, Detective Theis had more than just a distinctive sweatshirt, a physical resemblance, and what he and other detectives reasonably believed as a positive photograph match to the store video.  The evidence gathered by Detective Theis: the close association between Beach (a/k/a "Cj Stacks") and the phone number (317-517-9051),[2] the birth date match, and photograph-video identification of the second suspect as Beach—constituted probable cause.

In *Gibbs v. City of Chicago,* an officer observed a suspect fire a handgun. 2014 WL 1031440 (N.D. Ill. March 18, 2014).  After the individual was arrested for fighting arising from an unrelated incident, the officer told the arresting officer that

---

[2] Indeed, Beach admits that the text message chain included two photographs of Beach. (Dkt. 13, ¶ 17).

the suspect was also involved in the shooting. *Id.* at \*1-2. The suspect was subsequently charged with reckless discharge of a firearm, but his fighting charge was dismissed and the suspect was ultimately acquitted of the firearms charge. *Id.*

After the acquittal, the suspect brought suit under Section 1983 against the officer and the City of Chicago for wrongful arrest and detention. *Id.* at \*1. The district court granted summary judgment in the officer's favor, finding he was entitled to qualified immunity. The district court found there was no evidence that the officer and others at the scene were actively lying or if the officer knew his identification of the suspect was false. *Id.* After all, the issue for purpose of qualified immunity (discussed in greater detail below) is whether the officer's belief that the suspect fired the firearm was reasonable. *Id.* at \*3.

Given Detective Theis's thorough investigation and ultimate identification of Beach as the second suspect in the robbery, probable cause existed to seek the arrest warrant. This was recognized by Judge Murphy when he issued the valid arrest warrant. Because probable cause existed, and Beach's arrest was made pursuant to a facially valid warrant, Plaintiff's claims of false arrest, malicious prosecution, and false imprisonment fail as a matter of law.

**B.    Since Probable Cause Existed for Beach's Arrest and There Is No Evidence Detective Theis Acted Maliciously, Beach's Malicious Prosecution Claim Fails as a Matter of Law.**

For a plaintiff to prevail on a malicious prosecution claim under 42 U.S.C. § 1983, the plaintiff must satisfy both federal and state law. *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014) (holding that a plaintiff must establish all elements of

18

a state law malicious prosecution claim to proceed with a malicious prosecution claim under 42 U.S.C. § 1983).  Under Indiana state law, to establish a case for malicious prosecution, a plaintiff must satisfy the following elements: (1) defendant instituted or caused to be instituted an action against the plaintiff; (2) defendant acted maliciously in doing so; (3) defendant had no probable cause to institute the action; (4) the original action was terminated in the plaintiff's favor.  *Id.*

As discussed above, probable cause existed for Beach's arrest.  The existence of probable cause is fatal to Beach's federal and state claims for malicious prosecution.[3]  *Hart,* 798 F.3d at 587.  However, Beach's claim also fails because there is no evidence that Detective Theis acted maliciously in submitting his probable cause affidavit and arresting Beach.  Detective Theis conducted a thorough investigation of the armed robbery, and identified Beach based on the evidence he gathered.  Further, Detective Theis's identification of Beach as the second suspect was supported by other detectives in the Carmel Police Department.  (Dkt. 45-1 at ¶¶ 27, 34).

Plaintiff's claim also fails because there is no evidence of malice.  Malice may be shown by "evidence of personal animosity or inferred from a complete lack of probable cause or a failure to conduct an adequate investigation under the circumstances."  *Welton,* 770 F.3d at 674.  There is simply no evidence of personal animosity against Beach.  Similarly, malice cannot be inferred from a "complete lack of probable cause" because probable cause existed.  Even if the Court determines that

---

[3] Although the heading on Count I of Plaintiff's Amended Complaint identifies the cause of action as arising under 42 U.S.C. § 1983, Plaintiff also alleges his rights were violated under Indiana law.  (Dkt. 13 at ¶ 35).  As explained in this section and the next, Plaintiff's federal and state law claims for malicious prosecution fail.

probable cause *did not* exist, given the relatively low standard required for probable cause (less than "probability"), it cannot be said that there was a "complete lack" of probable cause.  Lastly, Detective Theis's investigation was adequate and thorough. He investigated the sweatshirt worn by the suspects, the phones owned by the suspects, and the social media history of the suspects.  (Dkt. 45-1 at ¶¶ 14, 19-29, 31, 50-52).   He submitted the fingerprints to the Indiana State Police, and upon interviewing Hollins, obtained a confession.  (Dkt. 45-1 at ¶ 17).  Detective Theis interviewed "Moni" (Iman Daniels) to try to learn more about the robbery.  (Dkt. 45-1 at ¶¶ 29-30).  Detective Theis consulted with his fellow detectives at the Carmel Police Department, who agreed with his identification of Beach as the second suspect. (Dkt. 45-1 at ¶¶ 27, 34).

Under the circumstances, there is no support for Plaintiff's malicious prosecution claim because probable cause existed for Beach's arrest and there is no evidence of malice by Detective Theis.  As a result, Detective Theis is entitled to judgment as a matter of law on Plaintiff's malicious prosecution claim.

### C.   Detective Theis is Immune from any State Law Malicious Prosecution Claim.

To the extent Beach makes a state-law claim of malicious prosecution against Detective Theis, his claim fails.  Although Indiana law recognizes the tort of malicious prosecution, such a claim against a governmental employee such as Detective Theis is barred by the Indiana Tort Claims Act.  *City of New Haven v. Reichhart,* 748 N.E.2d 374, 378-79 (Ind. 2001); I.C. § 34-13-3-3(6) (stating a governmental employee is not liable if a loss results from "the initiation of a judicial or administrative proceeding");

*see also Butt v. McEvoy,* 669 N.E.2d 1015, 1017-18 (Ind. Ct. App. 1996) (finding immunity for a governmental employee against a claim of malicious prosecution).  As a result, any state law claim of malicious prosecution against Detective Theis fails.

**D.    Detective Theis is entitled to qualified immunity.**

A government official such as Detective Theis is entitled to qualified immunity if his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Bianchi v. McQueen,* 818 F.3d 309, 316-17 (7th Cir. 2016) (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993)).  The two central questions to a determination of whether qualified immunity is available are whether a plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented.  *Id.* (citing *Brueggemann,* 682 F.3d at 580.

First, Plaintiff must identify a specific constitutional right beyond the general principle that Plaintiff should be protected from arrest without probable cause.  *See Maxwell v. City of Indianapolis,* 998 F.2d 431 (7th Cir. 1993) (stating that "no one disputes that the constitutional right not to be arrested without probable cause is well established," but instead requiring an analysis of specific facts and relevant law to the particular situation).  Plaintiff must show that he had a right not to be arrested after an officer identified him as a suspect after an investigation of the

crime.  Based on *Beauchamp* and other binding cases, Plaintiff's arrest did not violate a specific constitutional or statutory right.

As stated above, Detective Theis arrested Beach pursuant to a facially-valid warrant and—both before and after the arrest—a judicial officer determined probable cause existed.  While a suspect has the right to be free from arrest in the absence of probable cause, the question facing the court is whether a reasonable person in Detective Theis's position would have known that his identification of Beach as the second suspect in the robbery violated Beach's constitutional rights. After all, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.  *Malley v. Briggs,* 475 U.S. 335, 341 (1986).  In the context of probable cause, Plaintiff must show it was obvious that no reasonably competent officer would have believed there was probable cause.  *Id.*

As stated above, Detective Theis's identification of Beach was reasonable in light of clearly established precedent.  The Seventh Circuit has consistently found probable cause existed based on a single eyewitness's identification of a suspect. *See Woods,* 234 F.3d at 996.  Detective Theis's thorough investigation and ultimate identification of Beach as the second suspect in the robbery is reasonable.

As the Seventh Circuit stated, the probable cause standard is "even more forgiving in the context of qualified immunity, which applies not only to those officials who correctly determine that probable cause to arrest exists, but also to those governmental officials who reasonably but mistakenly conclude that it does." *Fox,* 600 F.3d at 833 (quoting *Spiegel v. Cortese,* 196 F.3d 717, 723 (7th Cir. 1999)).

Even if Detective Theis made a mistake of identification in the course of his investigation, he is still entitled to qualified immunity.

Plaintiff makes another allegation with respect to evidence.  The Amended Complaint alleges that Detective Theis and the City of Carmel "refused to produce exculpatory evidence" in Beach's criminal case.  (Dkt. 13 at p. 7, ¶ 41).  If true, Defendants may have violated Beach's due process rights under *Brady v. Maryland,* 373 U.S. 83, 87 (1963).  Beach's due process claim under *Brady,* however, is doomed for three reasons.  First, the allegation that Detective Theis refused to produce evidence is demonstratively false.  The investigation materials—including Beach's iPhone, Hollins's iPhone, the data from the cellular phones, and the Telecomm report—were available to the prosecutor, who would be able to see through the Aegis/New World system if evidence is available at either the Carmel Police Department or the Fishers Police Department.  (Dkt. 45-1 at ¶ 47).  At all relevant times after November 27, 2018, all information related to the investigation conducted by Detective Theis was available through normal discovery channels to the local prosecutor, who knew or should have known how to access the information. (Dkt. 45-1 at ¶ 55).  Then, when the prosecutor first contacted Detective Theis to request the data in January 2019, Detective Theis forwarded the request to Detective Haymaker.  (Dkt. 45-1 at ¶ 59; Dkt. 45-5).  Later, Detective Theis exchanged emails and spoke to the prosecutor on the telephone regarding the proper procedures.  (Dkt. 45-1 at ¶ 61).  Simply put, the undisputed evidence demonstrates that all investigative materials were available to the prosecutor (and

thus, available to Beach and his counsel during the criminal proceedings) as of seven days after Beach's arrest, and Detective Theis did not withhold or fail to disclose any evidence in the case. (Dkt. 45-1 at ¶ 57).

The second reason any claim under *Brady* fails is despite Plaintiff's contentions, the evidence is not exculpatory. In his Amended Complaint, Plaintiff alleges the videos found on Hollins's phone so thoroughly disproved Detective Theis's identification of Beach as the second suspect to make the videos exculpatory. Such an identification is not so easily dismissed, however. Detective Theis and his colleagues at the Carmel Police Department agreed that the photographs of Beach found in the "selfie" text thread appeared to be the same individual seen in the third video on Hollins's phone. (Dkt. 45-1 at ¶ 27). Therefore, in Detective Theis's estimation, the videos on Hollins's phone were not exculpatory at all; to Detective Theis, the videos proved that Beach was the second suspect in the robbery.

Perhaps most significantly, the third reason Plaintiff cannot make a claim under *Brady* is because Plaintiff suffered no prejudice from any alleged *Brady* violation. In *Strickler v. Greene,* the Supreme Court stated that prejudice must have ensued to establish a *Brady* violation. 527 U.S. 263, 281 (1999). The Seventh Circuit has cast doubt on whether an acquitted defendant can ever establish prejudice for a *Brady* violation, and other circuits have definitively held that an acquittal extinguishes a *Brady* claim. *Bianchi,* 818 F.3d at 321. Here, Plaintiff has suffered even less than a suspect that went through trial and was acquitted because the deputy prosecutor voluntarily dismissed the charges against Plaintiff. As a

result, Plaintiff has shown even less harm than the acquitted plaintiff in *Bianchi,* and as a result, Plaintiff's *Brady* claim fails.  For all of these reasons, Detective Theis is entitled to qualified immunity on each of Plaintiff's claims.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant Detective Theis's motion for summary judgment on each of Plaintiff's counts.  Detective Theis arrested Plaintiff pursuant to a valid warrant and probable cause existed for the arrest. There is no evidence Detective Theis acted maliciously or withheld evidence. Detective Theis is entitled to qualified immunity.  Since there are no genuine issues of material fact to support any of Plaintiff's claims, Detective Theis is entitled to judgment in his favor as a matter of law.

Respectfully submitted,

COOTS, HENKE & WHEELER, P.C.

*s/ Matthew L. Hinkle*
Matthew L. Hinkle, #19396-29
Alex Emerson, #32577-49
*Attorneys for Defendant, Adam Theis*

## CERTIFICATE OF SERVICE

I hereby certify that on the **19th day of November, 2020,** a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operations of the Court's electronic filing system.

Julie A. Camden
David W. Gray
CAMDEN & MERIDEW, PC
10412 Allisonville Road, Suite 200
Fishers, IN 46038
jc@camlawyers.com
*Attorney for Plaintiff*

Aimee Rivera Cole
TRAVELERS STAFF COUNSEL OFFICE
280 East 96th Street, Suite 325
Indianapolis, IN 46240
arcole@travelers.com
*Attorney for Defendant, City of Carmel*

*s/ Matthew L. Hinkle*
Matthew L. Hinkle, #19396-29

COOTS, HENKE & WHEELER, P.C.
255 East Carmel Drive
Carmel, IN 46032
Tel: (317) 844-4693
Fax: (317) 573-5385
Email:mhinkle@chwlaw.com
        aemerson@chwlaw.com

26